## Pennsylvania Flood Relief (Act 13)

GORNISH, *Acting Attorney General,* LILIEN, *Deputy Attorney General,* August 14, 1978—You have requested our opinion as to whether persons whose real property was acquired by a redevelopment authority or other local public agency at pre-flood values are eligible for a Pennsylvania Flood Relief Grant under the Act of May 11, 1973, P.L. 27 (Act 13). It is our opinion, and you are so advised, that they are not eligible.

The General Assembly passed Act 13 of 1973, to provide for up to a maximum of $3,000 per applicant to non-farm owners of homes or personal property damaged or destroyed by the floods of September, 1971 or June, 1972. Section 2 of Act 13 provides: "If real property was condemned under eminent domain proceedings and where measure of damages is calculated under section 602 of the Act of June 22, 1964 (P.L. 84, No. 6), known as the 'Eminent Domain Code,' said owner shall not be eligible for the grant provided in section 1 hereof."

Section 602(c) of the Eminent Domain Code of

June 22, 1964, Sp. Sess., P.L. 84, 26 P.S. §1-602(c), referred to in Act 13 provides: "In case of the condemnation of property in connection with any program or project which property is damaged by floods, the damage resulting therefrom shall be excluded in determining fair market value of the condemnee's entire property interest therein immediately before the condemnation."

The facts as you have stated indicate that many homeowners voluntarily transferred their properties to public authorities without the filing of formal declarations of taking, which is normally the initial step in a condemnation proceeding. These homeowners received pre-flood value for their properties as provided in section 602(c). The crux issue, therefore, is whether voluntary transfers of real property at pre-flood value to redevelopment authorities or other public agencies constitute a condemnation, as contemplated by the legislature, which would disqualify the homeowner from benefits under Act 13.

In our opinion the most reasonable conclusion is that the legislature did intend to exclude such voluntary transferors from receiving the grant.

Many thousands of properties were acquired without formal condemnation proceedings throughout the Commonwealth by various redevelopment authorities and other public agencies after the flood of 1972. If formal condemnation proceedings had been required to accomplish all these acquisitions, with the corresponding use of court time and manpower, then moneys utilized to compensate property owners would instead have been diverted to legal and administrative costs. It is therefore understandable that the various agencies in question decided to obtain the properties without

formal condemnation, thereby reducing the costs of acquisition. But once having determined that "condemnation" for purposes of payment of pre-flood value under the Eminent Domain Code may be accomplished by voluntary acquisition, then it logically follows that condemnation for purposes of Act 13 exclusion must equally encompass a voluntary transfer.

The only authority to pay these individuals pre-flood values is section 602(c), which refers to "the condemnation of the property." The facts presented to us are that the homeowners claiming a state grant received pre-flood value for their property even in the absence of formal condemnation proceedings. They were, accordingly, treated as condemnees under the Eminent Domain Code and received the benefit of section 602(c). Accordingly, we do not believe that a real property owner can on one hand contend that a voluntary acquisition should not be considered as a condemnation for purposes of exclusion from the grant and on the other hand accept the pre-flood benefits of section 602, which are predicated on a "condemnation." The legislature could not have intended to create such an absurd dichotomy.

The purpose of Act 13 was to give grants for certain losses as a result of the 1971 and 1972 floods. Once, however, a homeowner received pre-flood value for his or her home, eligibility for the grant was eliminated. For this reason section 2 of Act 13 was enacted as part of the law. It would be illogical to allow the grant to owners whose properties were not formally condemned but were nevertheless in the same financial position as those whose properties were acquired in formal condemnation proceedings.

Accordingly, it is our opinion that the use of the term "condemned" in section 2 of Act 13 is intended to cover voluntary or amiable acquisitions as well as formal condemnation proceedings, and the determination as to whether a flood relief grant may be paid is dependent upon the manner in which damages are measured under section 602 of the Eminent Domain Code and not the method of acquisition.